THE NORWALK.

*(District Court, E. D. New York.   October 19, 1881.)*

1. COLLISION—STEAMER CROSSING COURSE OF SAIL-VESSEL.
    Where a sloop and a steamer were approaching each other from opposite directions, where there was plenty of sea-room, and the steamer, in attempting to cross the sloop's course, came into collision with and sunk the sloop, *held*, that the steamer was in fault, and that being liable to sheer in certain conditions of wind and tide is no excuse.

2. SAME—ACTS IN EXTREMIS.
    The sudden luff made by the sloop when the steam-boat was upon her was a movement *in extremis*, and the natural result of the fault committed by the steamer, and therefore no fault that can render the sloop liable.

*L. R. Stegman* and *E. G. Davis*, for libellant.

*Dennis McMahon*, for respondent.

BENEDICT, D. J.   This action is brought by the owner of the sloop Jane Eliza to recover the damages resulting from the sinking of that sloop in a collision with the steam-boat Norwalk, which occurred on the twelfth day of October, 1880, in the Kill van Kull, off New Brighton, Staten island.   The time of the collision was between 2 and 3 o'clock P. M.   The weather at that time was clear, with a fresh breeze from N. W. by N., according to the libellant, and W. N. W., according to the claimant.   The tide was ebb; that is, running to the eastward in the Kill.   The steam-boat was moving about 12 miles an hour through the water, and bound to the westward.   The sloop was moving about five miles an hour, and bound to the eastward.   As the sloop approached the beacon near the eastern entrance to the Kill, the Norwalk was perceived coming down the Kill.   The weight of the evidence is that at this time the course of the sloop was to windward of the course of the steam-boat, and that if both vessels had held their courses they would have passed each other starboard to starboard.   In a short time the man forward on the sloop sang out to his father, who was steering the sloop, to put his helm hard down and run, as the steam-boat was coming into them.   The father put the helm hard down, and before he could get away from the tiller the steam-boat struck the sloop nearly admidships on the starboard side, causing her to sink instantly.   That this collision was the result of fault somewhere is evident, for the vessels were approaching in full view of each other, and there was plenty of room for them to pass each other in safety.

In my opinion the fault that caused the collision was committed by the steam-boat, and consisted in crossing the course of the sloop

at short distance ahead of her. The clear weight of the evidence is that the steam-boat was crossing the course of the sloop, when the man forward on the sloop gave the alarm to the man at the tiller. There was abundant room for the steam-boat to pass the sloop to the southward, and the testimony on the part of the steam-boat as to the presence of other sailing-vessels coming behind the sloop, contradicted as it is by several witnesses, has failed to satisfy me that the steam-boat had any good reason for attempting to pass to the northward of the sloop. There is testimony for the steam-boat which strongly suggests that the course taken by the steam-boat was owing to a sheer which the steam-boat in that wind and tide took, and which the pilot could not break before reaching the sloop. If this be the explanation of the steam-boat's course, the fault was in running so close to the sloop as to create danger of a collision with a steam-boat liable to sheer. If the sheer was taken by the pilot for the purpose of getting to northward of the sloop, the fault was in making it so close to the sloop; for, according to the master of the steam-boat, the steam-boat was within 50 feet of the sloop.

This estimate is confirmed by the fact that the engineer of the steam-boat had no time to reverse before the blow, the fact that the man at the tiller of the sloop had no time to run, and the alarm caused on board the sloop by the course of the steam-boat. There was no occasion under the circumstances for the steam-boat to cross the sloop's course in such close proximity, and the steam-boat must be held guilty of fault in so doing. No fault can be imputed to the sloop. The sudden luff made by the sloop when the steam-boat was upon her was a movement *in extremis*, and the natural result of the fault committed by the steam-boat. It was therefore no fault that can render the sloop liable. Nor was the collision caused by a want of proper lookout on the sloop. The only testimony upon the subject of lookout on the sloop comes from the man forward, and he says that he saw the steam-boat and warned his father as soon as there was danger. It is evident that the man forward on the sloop did not keep the steam-boat in view from the time she was first seen; but such omission cannot be held to be a fault that contributed to the collision, for the sloop held her course, as was her duty, up to the time when the tiller was shoved down, and then the vessels were close together, within 50 feet, as the testimony of the captain of the steam-boat shows.

There must be a decree for the libellant, with a reference to ascertain the amount.